# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

STATE OF MARYLAND
200 Saint Paul Pl
Baltimore, MD 21202

PRINCE GEORGE'S COUNTY
1301 McCormick Dr
Largo, MD 20774

              Plaintiffs

        v.

KASH PATEL, Director, Federal Bureau of
Investigation
935 Pennsylvania Ave NW
Washington, DC 20535-0001

PAMELA BONDI, Attorney General,
950 Pennsylvania Ave NW
Washington, DC 20530

JOLENE ANN LAURIA, Assistant Attorney
General for Administration,
950 Pennsylvania Ave NW
Washington, DC 20530

MICHAEL J. RIGAS, Acting Administrator,
U.S. General Services Administration,
1800 F St NW
Washington, DC 20004

FEDERAL BUREAU OF
INVESTIGATION,
935 Pennsylvania Ave NW
Washington, DC 20535-0001

U.S. DEPARTMENT OF JUSTICE,
950 Pennsylvania Ave NW
Washington, DC 20530

U.S. GENERAL SERVICES
ADMINISTRATION,
1800 F St NW
Washington, DC 20004

            Defendants.

Case No: 8:25-cv-3644

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.     The State of Maryland and Prince George's County, Maryland, bring this action to halt the defendant federal agencies' attempts to unlawfully sabotage a multiyear collaborative effort to develop a new Federal Bureau of Investigation (FBI) headquarters complex in Greenbelt, Maryland, and their attempts to unlawfully divert funding that Congress designated for that project.

2.     The federal government has been working for more than a decade to develop a new headquarters complex for the FBI to replace its aging facility in the J. Edgar Hoover Building in Washington, D.C. In two separate public laws enacted in 2022, Congress directed the General Services Administration (GSA) to select a location for the headquarters from three sites in Landover, Maryland; Greenbelt, Maryland; and Springfield, Virginia. Congress also set aside more than $1.1 billion in funding for the headquarters project. *See infra* ¶ 41.

3.     Federal law and policy have long recognized that the development of federal facilities demands close partnership with the state and local governments who will support and benefit from the facilities. Throughout the selection process for the FBI headquarters, Maryland and Prince George's County leaders joined in a coordinated bipartisan effort to ensure the federal government used a fair, transparent, and lawful process to select a site for the new headquarters, and to provide relevant stakeholders with information to make a reasoned selection that supported the FBI's security and mission needs. State and county leaders joined in this effort based on their expectation that securing the FBI headquarters in Prince George's County would bring transformative benefits to the County and the State.

4.     The GSA duly completed the site selection process in 2023 and selected the Greenbelt site. Congress set aside additional funds for the project after that decision. In July 2025, however, the FBI and the GSA abruptly announced that they had selected a new site, the

Ronald Reagan Building in Washington, D.C., and took steps to redirect the previously appropriated funds toward developing an FBI headquarters at the Ronald Reagan Building. These actions flouted Congress's explicit direction to choose a site from the three specified sites, as well as other specific statutory directives concerning the selection of the site and the use of the funds. They also violated requirements that the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706, imposes generally on the actions of federal agencies.

## JURISDICTION AND VENUE

5.      Jurisdiction in this Court is proper under 28 U.S.C. §§ 1331 and 1361.

6.      Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because plaintiff Maryland and its Attorney General and plaintiff Prince George's County reside in this District, and a substantial part of the acts or omissions giving rise to this action occurred in this District.

## PARTIES

7.      Plaintiff State of Maryland is a sovereign state of the United States of America. Maryland is represented by and through its chief legal officer, Attorney General Anthony G. Brown.

8.      Plaintiff Prince George's County is a county in Maryland and a political subdivision of Maryland. Prince George's County is represented by and through its chief legal officer, County Attorney Anthony D. Jones.

9.      Defendant U.S. Department of Justice is an agency of the United States. Defendant Pamela Bondi is sued in her official capacity as Attorney General. Defendant Jolene Ann Lauria is sued in her official capacity as Assistant Attorney General for Administration.

10.     Defendant Federal Bureau of Investigation is an agency of the United States and a component of the Department of Justice. Defendant Kash Patel is sued in his official capacity as Director of the FBI.

11.     Defendant U.S. General Services Administration is an agency of the United

States. Michael J. Rigas is sued in his official capacity as Acting Administrator of the GSA.

## FACTUAL ALLEGATIONS

**I.     Regulatory Scheme for Selection of Sites for Federal Agency Buildings**

12.     The General Services Administration manages the real estate needs of federal

agencies, including acquisition of real estate for use by federal agencies and design, construction,

and maintenance of federal real estate assets. *See generally* Gen. Servs. Admin, Real Estate,

http://www.gsa.gov/real-estate.

13.     The GSA typically employs a rigorous multistage process for investigating and

selecting sites for federal agencies. *See generally* Gen. Servs. Admin., The Site Selection Guide,

https://web.archive.org/web/20250423224326/https://www.gsa.gov/system/files/Site_Selection

_Guide.pdf. For a major building project, the process typically takes place over years. *See id.* at

26–27 Ex. 1.1 (outline of process); *see also id.* at 21 ("A typical site investigation takes nine (9)

months; a more complex one can require much more time."). These activities are governed by

statutory requirements codified at 40 U.S.C. §§ 3301–3318.

14.     Decisions about where to locate federal facilities have a range of profound effects

on states and localities and their economies. Accordingly, federal law and policy have for

decades required close consultation with state and local entities. For example, the statutes

governing site selection direct the GSA to distribute public buildings "equitably throughout the

United States," 40 U.S.C. § 3303(d), and require the GSA to engage with state and local leaders,

*id.* § 3306(c)(1). The Federal Management Regulation published by the GSA stresses that

location decisions should take into account "[c]ompatibility with State and local economic

development objectives." 41 C.F.R. § 102-83.85(b)(1). Location decisions should "should align,

where possible, with local and regional planning goals," and "[a]gencies should meaningfully

engage with local officials and community members potentially impacted by a location decision and consider their recommendations in light of Federal mission needs and equitability and sustainability goals." *Id.* The Site Selection Guide published by the GSA recognizes that "[f]ederal projects have an enduring impact on the community at large and on the immediate neighborhood" and "[f]ederal investment in each facility can enhance local efforts for economic development." Gen. Servs. Admin., The Site Selection Guide at 14. Various other federal policies "require that Federal agencies consult and engage with local officials when making real estate decisions and that they seek opportunities for Federal action to support local development objectives." 89 Fed. Reg. 29,261, 29,263 (Apr. 22, 2024).

15.    State and local governments are important partners to the GSA in its location decisions, providing critical information before and during the site selection process and, after site selection, helping facilitate site acquisition and making off-site improvements.

## II.    Efforts to Develop a New Consolidated FBI Headquarters Between 2011 and 2022

16.    The FBI has occupied its current headquarters in the J. Edgar Hoover Building since 1974. The federal government has recognized for many years that the J. Edgar Hoover Building is inadequate to meet the FBI's current needs and that a replacement is badly needed. A 2011 report by the Government Accountability Office, for example, noted that the J. Edgar. Hoover Building could not accommodate the FBI's workforce and dispersion of staff across other buildings hindered the FBI's mission. The report noted that the J. Edgar Hoover Building did not meet modern security standards. And it noted that the building showed major signs of deterioration inside and out, including crumbling concrete and persistent water infiltration. U.S. Gov't Accountability Off., GAO-12-96, Federal Bureau of Investigation: Actions Needed to Document Security Decisions and Address Issues with Condition of Headquarters Buildings 11–12, 19–22 (2011), https://www.gao.gov/assets/gao-12-96.pdf.

17.     In December 2011, the Senate Committee on Environment and Public Works adopted a resolution directing the GSA Administrator to proceed with plans for a new consolidated FBI headquarters facility. The resolution identified several considerations the Committee deemed important based on its review of a report that had been submitted by the FBI. These considerations included that the site would be "to the maximum extent feasible" within 2 miles of a Metro rail station and within 2.5 miles of the Capital Beltway, that the property would be federally owned, and that the facility would meet Interagency Security Committee (ISC) Level V security standards.[1] *See* S. Comm. on Env't & Pub. Works, 112th Cong., Committee Resolution: Federal Bureau of Investigation Consolidated Headquarters, National Capital Region (Dec. 8, 2011) (attached as Exhibit 1).

18.     In 2013, the GSA published a Request for Expressions of Interest soliciting potential sites for a new FBI headquarters complex.

19.     In 2014, the GSA convened a panel to review responses to the request and develop a short list of potential sites. In 2014, the GSA approved a short list of three sites in Greenbelt, Maryland; Landover, Maryland; and Springfield, Virginia.

20.     In the Consolidated Appropriations Act, 2016, Congress provided $1.6 billion in the Federal Buildings Fund administered by the GSA, specifying in statutory text that "$75,000,000 shall be for construction management and oversight activities, and other project support costs, for the FBI Headquarters Consolidation." Pub. L. No. 114-113, div. E, tit. V, 129 Stat. 2242, 2423, 2452 (2015).

---

[1] The Interagency Security Committee (ISC) prescribes standards for security of federal facilities. The standards categorize facilities with a Facility Security Level ranging from I to V. Level V is the highest level, reserved for "one-of-a-kind" facilities. Interagency Sec. Comm., The Risk Management Process 31 (2024), https://www.cisa.gov/sites/default/files/2025-07/The_Risk _Management_Process_2024_Edition.pdf.

21.    In 2016, the GSA submitted a prospectus to Congress outlining a plan to develop a new headquarters on one of the three sites on the short list developed in 2014. *See* Gen. Servs. Admin., Prospectus—Construction: FBI Headquarters Consolidation, National Capital Region at 2, Prospectus No. PNCR-FBI-NCR17 [hereinafter FY 2017 Prospectus], https://www.gsa.gov /system/files/FY2017_National_Capital_Region_FBI_Headquarters_Consolidation.pdf. The GSA and the FBI sought $1.4 billion in funding for the project. *Id.* at 3. The prospectus noted that, at the time, FBI personnel and resources were dispersed among 14 locations throughout the National Capital Region, and that "dispersion and fragmentation" hindered FBI's mission because it "diverts time and resources, hampers coordination, decreases flexibility, and impedes the FBI's ability to rapidly respond to ever changing, asymmetric threats." *Id.* The GSA noted that the J. Edgar Hoover Building and the FBI's other existing facilities were inadequate "to support today's FBI mission that includes an increased emphasis on national security." *Id.* at 4. The GSA proposed a new headquarters to permit consolidation of multiple facilities into a single facility that would meet current information technology, security, and resiliency standards. *Id.* at 3–4.

22.    In July 2017, the GSA and the FBI announced they were canceling the headquarters project because Congress had not approved enough funding to complete the project. Press Release, Gen. Servs. Admin., GSA Releases Statement on FBI Headquarters (July 11, 2017), https://www.gsa.gov/about-us/newsroom/news-releases/gsa-releases-statement-on-fbi -headquarters-07112017. But the agencies noted, "The cancellation of the project does not lessen the need for a new FBI headquarters. GSA and FBI will continue to work together to address the space requirements of the FBI." *Id.*

23.     In the Consolidated Appropriations Act, 2017, Congress provided $420,178,000 to the FBI for construction expenses, specifying in statutory text that "$323,000,000 shall be for the new Federal Bureau of Investigation consolidated headquarters facility in the National Capital Region." Pub. L. No. 115-31, div. B, tit. II, 131 Stat. 135, 197–98 (2017). In the same appropriations act, Congress provided $200,000,000 in the Federal Buildings Fund designated through statutory text "for construction and acquisition" associated with the "National Capital Region, FBI Headquarters Consolidation." Pub. L. No. 115-31, div. E, tit. V, 131 Stat. at 357.

24.     In the Consolidated Appropriations Act, 2022, Congress directed the Director of the FBI to work with the Administrator of the GSA to prepare and deliver to four congressional committees, within 180 days, "a report on the construction of a new headquarters for the Federal Bureau of Investigation in the National Capital Region" meeting the requirements of 40 U.S.C. § 3307(b). Pub. L. No. 117-103, div. B, § 534, 136 Stat. 49, 151 (2022). That statute required the Administrator of the GSA to transmit to Congress a prospectus providing details of a proposed project, including the main outlines of the proposal, a summary of costs, and a statement that other suitable spaces are not already available to the government. *See* 40 U.S.C. § 3307(b). In the same appropriations act, Congress directed that the Administrator of the GSA "shall select a site from one of the three listed in the General Services Administration Fiscal Year 2017 PNCR–FBI–NCR17 prospectus [the FY 2017 Prospectus] for a new fully consolidated Federal Bureau of Investigations (FBI) headquarters. Such decision shall be made in as expeditious manner as possible." Pub. L. No. 117-103, div. E, § 530(a), 136 Stat. at 276. The "three listed" sites were the Greenbelt, Maryland; Landover, Maryland; and Springfield, Virginia sites that had been placed on a short list in 2014 and discussed in the FY 2017 Prospectus. *See supra* ¶¶ 19, 21.

III.    **Further Developments in the Site Selection Process in 2022 and Input from Maryland and Prince George's County**

25.    Throughout the site selection process, the GSA solicited information from Maryland and Prince George's County regarding the viability of the two proposed sites in Prince George's County (Greenbelt, Maryland, and Landover, Maryland) and the ability of the State and County to make financial commitments for off-site improvements. Maryland and Prince George's County cooperated with these requests, highlighted the advantages of the two Maryland sites, and took steps to make the requested financial commitments and otherwise make the Maryland sites more appealing.

26.    In May 2022, the GSA met with Maryland and Prince George's County to discuss the site selection process and hear from the State and County about their sites. At this meeting, as described in later correspondence, the GSA urged Maryland and Prince George's County to provide further information about whether "there have been any significant changes to the site location or surrounding areas that would have a significant impact on the development of the site," whether "any infrastructure project(s) (i.e., roads and utilities) are planned in the vicinity of the site," and how "a potential FBI HQ fits within any existing or future master planning documents." Letter from Aaron Hassinger, Gen. Servs. Admin. to Gov. Larry Hogan, Angela Alsobrooks, Cnty. Exec., Prince George's County & David Iannucci, Prince George's Cnty. Econ. Dev. Corp. 1–2 (Aug. 26, 2022).

27.    In May 2022, Maryland and Prince George's County provided the GSA with a presentation on the two Maryland sites. The presentation highlighted advantages of the Maryland sites for the FBI and anticipated benefits to the region.

28.    The written materials for this presentation explained that locating the FBI headquarters in Prince George's County would bring high-paying jobs to the County and aligned

with a regional economic development strategy. The written materials also noted that building

the FBI headquarters in Greenbelt would ease regional traffic patterns by inducing cross-

commuting and reducing congestion because the site is adjacent to regional transit. The materials

specifically highlighted that of the three sites under consideration, only the Greenbelt site would

not worsen traffic impacts, including pollution, over time. *See* Prince George's County &

Maryland, Federal Bureau of Investigation Consolidated Headquarters Search 9, 11–12, app. at

13 (May 9, 2022).

29.     In a letter dated August 26, 2022, the GSA requested additional information from

Maryland and Prince George's County seeking to "develop a comprehensive and thorough

understanding of the reasonably likely offsite infrastructure improvements and the commitment

from local government officials, businesses, and other key stakeholders to reasonably ensure

those improvements can, and will, be accomplished." Letter from Aaron Hassinger to Larry

Hogan, Angela Alsobrooks & David Iannucci, *supra* ¶ 26.

30.     In response to the GSA's request, the Governor of Maryland and the County

Executive of Prince George's County submitted letters dated September 16, 2022, describing

financial commitments for off-site improvements. These financial commitments included $250

million from Maryland for the cost of transportation infrastructure mitigation measures for either

the Greenbelt or Landover site, and $107 million from Prince George's County for the cost of

constructing a parking garage and consolidated transit facilities at the Greenbelt site.

31.     In September 2022, the GSA provided a briefing on the criteria and evaluation

process for site selection to state and county government stakeholders. Also during September

2022, the GSA published a Site Selection Plan, which it updated with administrative updates in

November 2022. On October 7, 2022, the Governor of Maryland and the County Executive of

Prince George's County submitted additional information to the GSA in support of the Greenbelt and Landover sites.

32.     In the Consolidated Appropriations Act, 2023, Congress provided $375,000,000 in the Federal Buildings Fund for "Federal Bureau of Investigation Headquarters Consolidation." Pub. L. No. 117-328, div. E, tit. V, 136 Stat. 4459, 4682 (2022). The Act contained a provision setting additional detailed requirements for selection of a site:

> Sec. 527. The Administrator of the General Services Administration shall select a site from one of the three listed in the General Services Administration (GSA) Fiscal Year 2017 PNCR–FBI–NCR17 prospectus [the FY 2017 Prospectus] for a new fully consolidated Federal Bureau of Investigation (FBI) headquarters.
>
> In considering the September 2022 and amended November 2022 GSA Site Selection Plan for the FBI Suburban Headquarters, not later than 90 days after enactment of this Act, prior to any action by the GSA site selection panel for the new Federal FBI headquarters, the GSA Administrator shall conduct separate and detailed consultations with individuals representing the sites from the State of Maryland and Commonwealth of Virginia to further consider perspectives related to mission requirements, sustainable siting and equity, and evaluate the viability of the GSA's Site Selection Criteria for the FBI Headquarters to ensure it is consistent with Congressional intent as expressed in the resolution of the Committee on Environment and Public Works of the Senate (112th Congress), adopted December 8, 2011 and further described in the General Services Administration Fiscal Year 2017 PNCR–FBI–NCR17 prospectus. Following those consultations, the Administrator shall proceed with the site selection process.

Pub. L. No. 117-328, div. E, § 527, 136 Stat. at 4687.

33.     The GSA conducted the required consultation with individuals representing each of the Maryland and Virginia sites during March 2023. *See* Ex. 2 at 4.

34.     In July 2023, the GSA issued a second amendment to the Site Selection Plan, establishing the final criteria for selection. The five specified criteria were (1) FBI proximity to mission-related locations; (2) transportation access; (3) site development flexibility and schedule risk; (4) promoting sustainable siting and advancing equity; and (5) cost. The GSA also named

11

GSA Public Buildings Service Commissioner Nina Albert as Site Selection Authority, the official authorized to make the final selection decision.

35.    Maryland and Prince George's County provided additional information in support of their proposed sites. In letters dated July 21, 2023, the Governor of Maryland, Speaker of the Maryland House of Delegates and President of the Maryland Senate, and County Executive of Prince George's County explained to the GSA how the Maryland sites met and exceeded the final site selection criteria and reaffirmed the jurisdictions' financial commitments to cover the cost of off-site improvements for the FBI headquarters.

36.    A panel composed of three government employees evaluated the potential sites in light of the selection criteria and, in August 2023, delivered a consensus report to the Site Selection Authority.

## IV.    The September 2023 Selection of the Greenbelt, Maryland, Site

37.    On September 30, 2023, the Site Selection Authority, Ms. Albert, delivered a final Site Selection Decision. Gen. Servs. Admin., Site Selection Decision (Sept. 30, 2023) (attached as Exhibit 2). The Site Selection Authority selected the Greenbelt, Maryland, site and explained the choice in a detailed written decision spanning 38 pages. The decision highlighted key advantages that the Greenbelt site offered for transit accessibility, schedule certainty, opportunities for positive impact through sustainable and equitable development,[2] and cost to taxpayers. *See* Ex. 2 at 37.

38.    On November 9, 2023, the GSA publicly announced its selection of Greenbelt, Maryland, for the new FBI headquarters and its intent to move forward with site acquisition. *See* Press Release, Gen. Servs. Admin., GSA Selects Greenbelt, Maryland, for New FBI

---

[2] The Site Selection Authority stated that she did not consider "race, ethnicity, sex, gender, national origin, alienage, or religion." Ex. 22 at 11 n.5.

Headquarters Campus Location (Nov. 9, 2023), https://www.gsa.gov/about-us/newsroom/news

-releases/gsa-selects-greenbelt-maryland-for-new-fbi-headquarters-campus-location-11092023.

39.     Congress continued setting aside funding for the project. In the Further

Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. B, tit. V, 138 Stat. 460, 552

(2024), Congress set aside $200,000,000 in the Federal Buildings Fund for "construction and

acquisition" associated with the "National Capital Region: Federal Bureau of Investigation

Headquarters Consolidation."

40.     In March 2024, in accordance with the requirements of the Consolidated

Appropriations Act, 2022, *see supra* ¶ 24, the GSA submitted a prospectus report for the

Greenbelt site to congressional oversight committees. *See* Report: Site Acquisition, Design, and

Management/Oversight/Support Activities, Department of Justice—Federal Bureau of

Investigation Consolidated Headquarters, Greenbelt, Maryland (2024), https://www.gsa.gov

/system/files/FY%202024%20Greenbelt%20MD%20Federal%20Bureau%20of%20Investigation

.pdf. In the report, the GSA noted that the FBI was "scattered across multiple expensive leases in

the [National Capital Region]." *Id.* at 5. The GSA also noted the information technology and

security needs previously discussed in the FY 2017 Prospectus. *Id.* at 5–6. A new facility at the

Greenbelt location, the GSA noted, would allow the FBI to consolidate about 9 locations and

have "the appropriate utilities, technical infrastructure, and space design needed to support the

FBI's national security and law enforcement mission." *Id.* The GSA anticipated that the FBI

would also maintain a downtown Washington, DC location accommodating 750 to 1000

personnel. *Id.* at 4 n.6. In the report, the GSA explained that it "intend[ed] to expeditiously move

forward with site acquisition" and other activities "using the GSA's existing balances of

approximately $845 million." *Id.* at 3. The report also included an estimated schedule under which the GSA would acquire the Greenbelt site by fiscal year 2025. *Id.* at 5.

41.     The total funds appropriated and designated for the Greenbelt headquarters through statutory text since 2016 thus amount to $850 million in the Federal Buildings Fund and $323 million to the Department of Justice:

|  | Federal Buildings Fund | Department of Justice |
| --- | --- | --- |
| Pub. L. No. 114-113 (2015) | $  75,000,000 |  |
| Pub. L. No. 115-31 (2017) | $200,000,000 | $323,000,000 |
| Pub. L. No. 117-328 (2022) | $375,000,000 |  |
| Pub. L. No. 118-47 (2024) | $200,000,000 |  |

*See supra* ¶¶ 20, 23, 32, 39.

42.     Maryland and Prince George's County have made extensive preparations since the September 2023 selection. In 2025, Maryland enacted a law requiring the Governor to include at least $200 million in the annual budget for site redevelopment and to improve transportation infrastructure for the FBI headquarters if the GSA applies to Prince George's County or Maryland for a permit for the project.[3] And for fiscal year 2025, Prince George's County approved $131 million in funding for activities in support of the FBI headquarters project.

43.     As of late 2024, the GSA was still actively pursuing the Greenbelt headquarters project. GSA personnel communicated with personnel in the Maryland Department of General Services in November 2024 seeking to arrange for Maryland to grant the GSA a right of entry to State-owned property at the proposed site for preparatory work. In these communications, GSA personnel indicated that "GSA is targeting a February award for our preliminary site activities."

---

[3] In 2022, the Maryland General Assembly authorized $200 million in general obligation bond funding to support construction of a nearby highway as well as other necessary improvements.

Email from Aaron Hassinger, Gen. Servs. Admin, to Catherine Mateer, Md. Dep't of Gen. Servs. (Nov. 5, 2024, at 7:21 AM). Out of the $850 million that Congress provided to the GSA for the project, the agency spent approximately $6 million for consulting, management, and site studies before 2025. *See* Gen. Servs. Admin., Prospectus—Renovation: Federal Bureau of Investigation Headquarters, Ronald Reagan Building, Washington, DC at 5 n.9, Prospectus No. PDC-0000AF-DC25, https://www.gsa.gov/system/files/FY25%20Washington%20DC %20Federal%20Bureau%20of%20Investigation%20Prospectus%20508%20compliant.pdf.

## V.     The GSA and the FBI's Unlawful Selection of the Ronald Reagan Building

44.     The Greenbelt FBI headquarters project thus grew out of more than a decade of deliberation, planning, and collaboration with Congress and state and local authorities. In July 2025, the FBI and the GSA announced they were casting all that aside and were embarking on a new plan.

45.     On July 1, 2025, the FBI and the GSA each issued a press release announcing "the selection of the Ronald Reagan Building complex in Washington, D.C., as the new location for FBI headquarters." Press Release, FBI, New FBI Headquarters in Washington, D.C. (July 1, 2025) (attached as Exhibit 3), https://www.fbi.gov/news/press-releases/new-fbi-headquarters-in -washington-dc; Press Release, Gen. Servs. Admin., FBI Announces New Headquarters in Washington, DC (July 1, 2025) (attached as Exhibit 4), https://www.gsa.gov/about-us/newsroom /news-releases/fbi-announces-new-headquarters-in-washington-dc-07012025. The announcements stated:

> The [FBI and the GSA's] announcement follows nearly two decades of attempts to find the needed space to meet the FBI's mission and workforce requirements. Previous efforts focused on constructing a new suburban campus, which would have cost the taxpayers billions of dollars and would have taken years to construct. In support of the administration's goal to optimize the federal real-estate portfolio, the GSA and FBI identified an existing federal property. The

Ronald Reagan Building complex provides a world-class facility that supports the FBI's critical mission and saves money for taxpayers.

Ex. 3 at 1; *see also* Ex. 4 at 1 (substantially identical text).

46.     The Consolidated Appropriations Act, 2022, and the Consolidated Appropriations Act, 2023, both directed the GSA to choose a site from one of the three sites identified in the FY 2017 Prospectus. The Ronald Reagan Building was not one of those three sites.

47.     The July 2025 announcements did not even mention the September 2023 selection decision, much less explain why the GSA was discarding the decision. The agencies' July 2025 announcements did not discuss the selection criteria established in the Site Selection Plan or the Site Selection Authority's detailed analysis of those factors in the 2023 selection decision.

48.     The agencies issued the July 2025 announcements without engaging in "separate and detailed consultations" with representatives of Maryland as required by the Consolidated Appropriations Act, 2023. The July 2025 announcements also did not address the considerations that the Consolidated Appropriations Act, 2023, identified for the GSA to explore in those consultations. And they did not discuss the December 2011 committee resolution or the FY 2017 Prospectus that were referenced in the Consolidated Appropriations Act, 2023.

49.     The proposal for an FBI headquarters at the Ronald Reagan Building is also at odds with congressional intent as reflected in the December 2011 Senate committee resolution, which was in turn referenced in the Consolidated Appropriations Act, 2023. The December 2011 resolution suggested the headquarters site should be to the "maximum extent practicable" within 2.5 miles of the Capital Beltway. Ex. 1 at 1. The Ronald Reagan Building is approximately 8 miles from the closest point on the Capital Beltway. Moreover, upgrading the Ronald Reagan Building to meet ISC Level V standards and the security needs of the FBI would pose serious challenges not acknowledged in the July announcements. The Ronald Reagan Building is nearly

30 years old and is showing signs of age. Less than three weeks before the July 1, 2025, selection

announcement, the Acting GSA Administrator submitted prospectuses for two major repair

projects at the Ronald Reagan Building. The first proposed project was a $95 million

replacement of the Ronald Reagan Building's fire protection system, needed because the existing

fire protection system had "reached the end of its useful life." Gen. Servs. Admin., Amended

Prospectus—Alteration: Ronald Reagan Building Complex, Washington DC at 2, Prospectus No.

PDC-0000AF-DC25, https://www.gsa.gov/system/files/FY%202025%20Prospectus%20Ronald

%20Reagan%20FLS%20Washington%20DC%20FINAL%20-%20508%20Compliant.pdf. The

second proposed project was a $36 million "repair of multiple cylindrical drum leaks at the

building's core." Gen. Servs. Admin., Prospectus—Alteration: Ronald Reagan Federal Office

Building, Washington DC at 2, Prospectus No. PDC-0000-WA26, https://www.gsa.gov/system

/files/FY%202026%20Prospectus%20Ronald%20Reagan%20Building%20Envelope

%20Washington%20D.C.%20FINAL%20-%20508%20Compliant.pdf. The Ronald Reagan

Building was originally designed for mixed public and private use and has current private

tenants. *See* Ronald Reagan Bldg. & Int'l Trade Ctr., About Us, https://rrbitc.com/about/. Similar

concerns had led to other proposed headquarters sites being excluded from consideration earlier

in the process. *See, e.g.*, Gen. Servs. Admin., Federal Bureau of Investigation Headquarters

Consolidation, Site Identification and Evaluation: Approving Official's Decision 6–7 (2014),

https://www.gsa.gov/system/files/2013%20FBI%20Headquarters%20Site%20Identification

%20and%20Evaluation%20Approving%20Officials%20Decision_Redacted%20%281%29.pdf

(recommending that a Suitland, Maryland, site be excluded from consideration because of

challenges converting an existing federal facility to meet the FBI's needs).

**VI.    The Agencies' Efforts to Unlawfully Divert Funds**

50.    The FBI and the GSA have since taken or proposed to take further steps to divert funding intended for the FBI Greenbelt project to support installing the FBI at the Ronald Reagan Building instead. But these steps violate the law.

51.    The Constitution vests Congress with the power of the purse, and funds may be expended from the Treasury only with an appropriation from Congress. U.S. Const, art. I, § 9, cl. 7; *see* Gov't Accountability Off., Principles of Federal Appropriations Law, ch. 2, § A.2, at 2-3 (4th ed., 2016 rev.) [hereinafter GAO Red Book], https://www.gao.gov/legal/appropriations-law /red-book.[4] Federal law generally prohibits the use of appropriated funds for purposes other than the purposes Congress has specified in the statutory text. 31 U.S.C. § 1301(a) ("Appropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law."); *see also Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) ("Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes . . . ."); *Salazar v. Ramah Navajo Ch.*, 567 U.S. 182, 200 (2012) ("An agency's discretion to spend appropriated funds is cabined . . . by the 'text of the appropriation' . . . ." (quoting *Int'l Union, United Auto. Workers v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984))).

52.    Under certain circumstances, an agency may apply appropriated funds within a particular account to a different program or activity other than what was contemplated at the time the funds were appropriated. This is called "reprogramming." *See generally* GAO Red Book, ch. 2, § B.7.b, at 2-43 to -47. But an agency cannot reprogram funds in a way that conflicts with conditions or restrictions that were attached to the original funds through statutory text (and not,

---

[4] The "Red Book" published by the GAO has been recognized as an authoritative treatise on federal appropriations law, including by the Supreme Court. *See, e.g.*, *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1319 (2020) (citing the Red Book).

for example, merely reflected in legislative history or an agency budget request). *See* 31 U.S.C.
§ 1532 ("subject to the same limitations provided by the law appropriating the amount").
Undoing restrictions imposed by statutory text requires a further statutory enactment. *See*
*Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 954–55 (1983) (noting that Congress
may undo its own earlier actions only through "bicameral passage followed by presentment to
the President.").

53.    By letter dated July 1, 2025, the FBI provided notice that it intended to reprogram
$555 million of existing FBI funding "to relocate to, renovate, build-out, and furnish an existing,
Federally owned building in Washington, D.C., to serve as the new FBI HQ in the NCR." U.S.
Dep't of Just., Report of Reprogramming Action—FY 2025, at 2 (July 1, 2025) (attached as
Exhibit 5). The notice stated, "While security and renovation costs are still being assessed, the
FBI and the GSA have determined the Ronald Reagan building Complex (RRBC) at 1300
Pennsylvania Avenue NW is the best option in Washington, D.C. for the headquarters." The $555
million included $323 million that had been appropriated in the Consolidated Appropriations
Act, 2017, and designated for the FBI headquarters project through statutory text. *See* Ex. 5 at 1;
*see supra* ¶ 23.

54.    Under limited circumstances, an agency also may shift funds from one
appropriation to another. This is called "transfer." *See generally* GAO Red Book, ch. 2, § B.7.a,
at 2-38 to -43. Transfer is distinguished from reprogramming in that transfer entails moving
funds from one appropriation account to another, whereas reprogramming entails shifting of
funds within an appropriation account. A transfer must be expressly authorized by law. *See* 31
U.S.C. § 1532. Approval of relevant congressional committees is not sufficient to authorize a
transfer. *See* GAO Red Book, ch. 2, § B.7.a, at 2-39 ("[I]nformal congressional approval of an

unauthorized transfer of funds between appropriation accounts does not have the force and effect of law."). As with reprogramming, a transfer may not conflict with conditions or restrictions that were attached to the original funds through statutory text (and not, for example, merely reflected in legislative history or an agency budget request). *See* 31 U.S.C. § 1532 ("subject to the same limitations provided by the law appropriating the amount").

55.     By letter dated September 19, 2025, addressed to leadership of the Senate Committee on Appropriations, the Senate Subcommittee on Financial Services and General Government, the House Committee on Appropriations, and the House Subcommittee on Financial Services and General Government, the GSA requested authority to "transfer $843,769,886 appropriated to the Federal Buildings Fund (FBF) for the Federal Bureau of Investigation (FBI) Headquarters Consolidation from the FBF's construction and acquisition account to the FBF's major repairs and alterations account." Letter from Michael J. Rigas, Gen. Servs. Admin., to Hon. Susan Collins et al. 1 (Sept. 19, 2025), (attached as Exhibit 6). The letter stated, "In April 2025, GSA and FBI determined that the existing Ronald Reagan Building (RRB) could be renovated and altered to meet FBI's headquarters needs at a lower cost and in a shorter timeframe than construction of a new facility." Ex. 6 at 2. The GSA stated that it was seeking approval of the transfer "[t]o support the relocation of FBI into the RRB and to fund the necessary major repairs and alterations." Ex. 6 at 2. The GSA indicated that it "will not financially obligate the Government using the above-referenced appropriations until the Committees grant their approval of the GSA's transfer requests." Ex. 6 at 3.

56.     The September 19 letter failed to recognize that approval of the appropriations committees would not be sufficient to authorize a transfer of funds, or to override restrictions on the original appropriations that are imposed by statutory text. *See supra* ¶¶ 52, 54.

57.    The GSA also prepared a prospectus outlining the proposed project. *See* Gen. Servs. Admin., Prospectus—Renovation: Federal Bureau of Investigation Headquarters, Ronald Reagan Building, Washington, DC, *supra* ¶ 43. On October 29, 2025, the Senate Committee on Environment and Public Works voted to approve the prospectus. *See* Press Release, S. Comm. on Env't & Pub. Works, EPW Committee Advances Nominations, Resolutions, and Bipartisan Legislation at Business Meeting (Oct. 29, 2025), https://www.epw.senate.gov/public/index.cfm /press-releases-republican?ID=BA7CE35D-C7FC-4EE0-A9C8-EED60BDDBD54. But approval of a prospectus by the Senate Committee on Environment and Public Works does not override statutory restrictions on funds appropriated to GSA.

## VII.    Harms to Maryland and Prince George's County from the Defendants' Actions

58.    The decisions of the FBI and the GSA selecting the Ronald Reagan Building as the FBI headquarters site and the FBI's decision to reprogram funds designated for the headquarters project have caused and will cause material and predictable harm to Maryland and Prince George's County.

59.    The actions of the FBI and the GSA harm Maryland's proprietary interests associated with its ownership of land at the Greenbelt site. Maryland owns approximately 22.5 acres of land, and the GSA earlier negotiated with Maryland to obtain an easement to this property as a security perimeter buffer for the new FBI headquarters. The parties discussed a draft agreement under which the GSA and the United States would agree to certain terms and conditions, including payment of "the sum on One Dollar ($1.00) and other good and valuable consideration" for the easement. Maryland and the GSA have not reached a final agreement, and no easement has yet been granted. Maryland also earlier advised the GSA that it was open to discussing other forms of transactions under which it would convey fee simple ownership of the property to the GSA. The challenged decisions of the FBI and the GSA impair Maryland's ability

to negotiate for and ultimately obtain payment or other consideration in exchange for the easement or other rights to the property. The challenged decisions of the FBI and the GSA also impair the market value of the parcel owned by Maryland, because a plan by the federal government to obtain rights to property necessarily increases the market value of that property.

60.     The actions of the FBI and the GSA also injure Maryland and Prince George's County by denying them the further benefits they would receive from the FBI headquarters project. A major federal headquarters project brings predictable benefits to the state and locality where the project is located. This includes myriad direct, tangible economic benefits. For example, state and county agencies receive permitting fees associated with the construction project and increased sales and income tax receipts during the construction project and later with the placement of the federal building. A new federal property also provides an opportunity for a state agency to contract for operation of vending facilities on that federal property under the federal Randolph-Sheppard Act. *See* 20 U.S.C. § 107a(a)(5).[5] State and local governments also stand to receive intangible benefits such as prestige and beautification. The range of valuable benefits that flow from major federal buildings projects explains why state and local governments vigorously compete to attract such projects. These benefits are recognized, for example, in the statutory provisions directing the GSA to distribute public buildings "equitably throughout the United States," 40 U.S.C. § 3303(d), and requiring engagement with state and local leaders, *id.* § 3306(c)(1), and the statutory direction in the Consolidated Appropriations Act, 2023, to consult with representatives of state government and consider states' perspectives on

---

[5] The Randolph-Sheppard Act, 20 U.S.C. §§ 107–107f, provides a priority for blind vendors for operation of vending facilities on federal property. Federal agencies contract with a designated state agency—in Maryland, the Maryland State Department of Education, Division of Rehabilitation Services—that then licenses blind vendors to operate the facilities.

factors such as sustainable siting and equity. Indeed, the September 2023 site selection decision explicitly considered impact on surrounding communities and concluded that "Greenbelt offers the greatest opportunity for the Government's investment to positively impact the Washington region through sustainable and equitable development." Ex. 2 at 37.

61.     The failure of the FBI and the GSA to consult with Maryland and Prince George's County before their selection of the Ronald Reagan Building and the FBI reprogramming decision deprived Maryland and Prince George's County of the right to participate in the site selection process, which is embodied in the statutory direction in the Consolidated Appropriations Act, 2023, to consult with representatives of state government and the more general statutory provision requiring engagement with state and local leaders, 40 U.S.C. § 3306(c)(1). The failure of the FBI and the GSA to follow the procedures required under 40 U.S.C. § 3307 and the relevant appropriations acts denied Maryland and Prince George's County the opportunity to provide relevant information and otherwise influence the agencies' decisions to select the Ronald Reagan Building as the site and reprogram the funds. The history of the consultations with Maryland and Prince George's County before the selection of the Greenbelt site shows that Maryland and Prince George's County supplied relevant information in that process. For example, in addition to information about Maryland and Prince George's County's financial commitments for off-site improvements, *see supra* ¶¶ 30, 35, the GSA received and considered letters from elected representatives from Maryland and Prince George's County indicating alignment of the FBI headquarters project with local development plans. *See* Ex. 2 at 33. The violation of the procedural rights of Maryland and Prince George's County has in turn injured the material interests of the plaintiffs discussed above.

## CLAIMS FOR RELIEF

### COUNT I—FBI SELECTION DECISION
### VIOLATIONS OF FEDERAL STATUTES

62. The plaintiffs incorporate by reference the allegations in the preceding paragraphs.

63. Federal agencies' "power to act and how they are to act are authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). Indeed, "an agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). This is especially true in matters relating to federal funding. *See Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 427 (1990) (noting that "[t]he power to control and direct the appropriations" properly rests with Congress, not the Executive Branch (quoting Joseph Story, 2 Commentaries on the Constitution of the United States § 1348 (3d ed. 1858))).

64. The FBI's July 2025 selection of the Ronald Reagan Building as the headquarters site exceeded the FBI's authority and violated statutory directives.

    a. The FBI's selection decision exceeded the authority of the FBI given the statutory provisions committing the selection decision to the GSA.

    b. The FBI's selection decision conflicted with the statutory directives prescribing procedures and considerations for the selection decision.

    c. The FBI's selection decision conflicted with the statutory directive limiting the selection decision to three specified locations.

65. At least five sources of authority authorize relief against these violations.

    a. The Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706, authorizes judicial review of the actions of a federal agency or officer. A court must "hold

unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2).

b. Under 28 U.S.C. § 1361, a federal court may issue relief "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.*

c. Federal courts may issue equitable relief against federal officials who act ultra vires, or "beyond . . . limitations" imposed by federal statute or the Constitution. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689–90 (1949).

d. Federal courts also have historically recognized authority to issue injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015).

e. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), authorizes a federal court to "declare the rights and other legal relations of any interested party" in a case within its jurisdiction.

## COUNT II—GSA SELECTION DECISION VIOLATIONS OF FEDERAL STATUTES

66.    The plaintiffs incorporate by reference the allegations in the preceding paragraphs.

67.    The GSA's July 2025 selection of the Ronald Reagan Building as the headquarters site exceeded the GSA's authority and violated statutory directives.

a. The GSA's selection decision conflicted with the statutory directives prescribing procedures and considerations for the selection decision.

     b.   The GSA's selection decision conflicted with the statutory directive limiting the selection decision to three specified locations.

68.    The sources of authority identified in paragraph 65 above authorize relief against these violations.

## COUNT III—FBI REPROGRAMMING DECISION
## VIOLATIONS OF FEDERAL STATUTES

69.    The plaintiffs incorporate by reference the allegations in the preceding paragraphs.

70.    The FBI's reprogramming of the $323 million appropriated in the Consolidated Appropriations Act, 2017, exceeded the FBI's authority and violated statutory directives.

     a.   The reprogramming was not authorized by law.

     b.   The reprogramming violated the restrictions on the use of the funds contained in the statutory text.

71.    The sources of authority identified in paragraph 65 above authorize relief against these violations.

## COUNT IV—FBI SELECTION DECISION
## ADMINISTRATIVE PROCEDURE ACT (ARBITRARY AND CAPRICIOUS)

72.    The plaintiffs incorporate by reference the allegations in the preceding paragraphs.

73.    The Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706, authorizes judicial review of the actions of a federal agency or officer. A court must "hold unlawful and set aside agency action" that is "arbitrary" or "capricious." *Id.* § 706(2). An agency action is arbitrary or capricious where it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). An agency must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice

made.'" *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). An agency fails to meet this standard if it "failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* When an agency action breaks with a prior policy or decision, "the requirement that an agency provide reasoned explanation for its action . . . ordinarily demand[s] that it display awareness that it *is* changing position. An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books. And of course the agency must show that there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (citations omitted). Moreover, "a more detailed justification" is needed if the agency's "new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account." *Id.* And an agency generally must "treat like cases alike." *Kirk v. Comm'r of Soc. Sec. Admin.*, 987 F.3d 314, 321 (4th Cir. 2021) (quoting *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007)).

74.     The FBI's July 2025 selection of the Ronald Reagan Building as the headquarters site was arbitrary and capricious under these standards. Among other reasons, the FBI failed to acknowledge and address the prior selection plan and selection decision and the factual findings and reasoning underlying them. The FBI failed to consider important aspects of the problem, including the needs of the FBI, the costs and feasibility of the Ronald Reagan Building plan, and the statutory limitations applicable to the site selection and the funding provided by Congress for the headquarters project. The FBI also failed to consider the reliance interests of Maryland and

Prince George's County in the selection of Greenbelt. The FBI also failed to consult with Maryland before the decision and failed to consider information Maryland could have provided relevant to the decision. The FBI's abrupt decision also broke with the FBI's past cautious and measured approach to the FBI headquarters project and violated the obligation to treat "like cases alike."

## COUNT V—GSA SELECTION DECISION
## ADMINISTRATIVE PROCEDURE ACT (ARBITRARY AND CAPRICIOUS)

75.     The plaintiffs incorporate by reference the allegations in the preceding paragraphs.

76.     The GSA's July 2025 selection of the Ronald Reagan Building as the headquarters site was arbitrary and capricious under 5 U.S.C. § 706(2)(A). Among other reasons, the GSA failed to acknowledge and address the prior selection plan and selection decision and the factual findings and reasoning underlying them. The GSA failed to consider important aspects of the problem, including the needs of the FBI, the costs and feasibility of the Ronald Reagan Building plan, and the statutory limitations applicable to the site selection and the funding provided by Congress for the headquarters project. The GSA also failed to consider the reliance interests of Maryland and Prince George's County in the selection of Greenbelt. The GSA also failed to consult with Maryland before the decision and failed to consider information Maryland could have provided relevant to the decision. The GSA's decision—which was abrupt, sparsely explained, and based on slim evidence—broke with the cautious, collaborative, and transparent approach the GSA has historically taken in site selection, both generally and with respect to the FBI headquarters project specifically. It thereby violated the obligation to treat "like cases alike."

## COUNT VI—FBI REPROGRAMMING DECISION
## ADMINISTRATIVE PROCEDURE ACT (ARBITRARY AND CAPRICIOUS)

77.    The plaintiffs incorporate by reference the allegations in the preceding paragraphs.

78.    The FBI reprogramming decision was arbitrary and capricious under 5 U.S.C. § 706(2)(A) because it was based on the incorrect premise that the July 2025 selection of the Ronald Reagan Building was valid. The FBI also failed to consider the statutory limitations applicable to the funding provided by Congress for the headquarters project.

### REQUESTS FOR RELIEF

Plaintiffs request that the Court:

(a) hold unlawful, set aside, and vacate the FBI's and the GSA's selection of the Ronald Reagan Building as the headquarters site and the FBI's reprogramming of funds;

(b) enter a permanent injunction preventing any implementation of the FBI's and the GSA's selection of the Ronald Reagan Building as the headquarters site and the FBI's reprogramming of funds, including any obligation or disbursement of funds designated for the Greenbelt FBI headquarters project for other purposes;

(c) enter a declaratory judgment declaring that the FBI's and the GSA's selection of the Ronald Reagan Building as the headquarters site and the FBI's reprogramming of funds are unlawful and void;

(d) award the plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

(e) grant such other relief as the Court may deem proper.

Date: November 6, 2025

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ JAMES C. LUH
JAMES C. LUH (D. Md. Bar No. 31776)
ADAM KIRSCHNER (D. Md. Bar No.
    31767)
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us

Attorneys for State of Maryland

ANTHONY D. JONES*
Prince George's County Attorney

/s/ ANDREW J. MURRAY
ANDREW J. MURRAY (D. Md. Bar No.
    10511)
(signed by James C. Luh with permission of
    Andrew J. Murray)
Associate County Attorney
Prince George's County Office of Law
1301 McCormick Drive, Suite 4100
Largo, MD 20774
(301) 952-5225
ajmurray@co.pg.md.us

Attorneys for Prince George's County

* *Application for admission approved and*
  *pending admission ceremony*