**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

STATE OF MARYLAND, et al.

            Plaintiffs

      v.

KASH PATEL, Director, Federal Bureau of
Investigation, et al.

            Defendants.

Case No: Case No: 8:25-cv-3644-TDC

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT
ON THE PLEADINGS AND MEMORANDUM IN OPPOSITION TO DEFENDANTS'
CROSS MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.      The plaintiffs' injuries are redressable by court action. ......................................... 2

    II.    The January 2026 Department of Justice appropriations statute did not ratify the defendants' unlawful actions.................................................................................. 8

    III.   The defendants concede that the FBI and GSA selection decisions violated the pertinent provisions of the Consolidated Appropriations Act, 2022, and Consolidated Appropriations Act, 2023. ................................................................11

    IV.   The July 1, 2025, FBI reprogramming action was also unlawful. ........................ 13

          A.    The reprogramming action qualified as final agency action because it purported to alter limits on the use of funds set aside for the FBI headquarters project. .................................................................................. 13

          B.    The defendants have conceded that the FBI reprogramming action was arbitrary and capricious because its only purpose was to implement the unlawful selection of the Ronald Reagan Building. ................................. 13

          C.    The FBI reprogramming decision is additionally invalid because it violated statutory restrictions on $323 million of the reprogrammed amount................................................................................................... 14

CONCLUSION.................................................................................................................... 15

i

## TABLE OF AUTHORITIES

**CASES**

*Appalachian Voices v. State Water Control Bd.*,
    912 F.3d 746 (4th Cir. 2019) ................................................................. 4

*Belk v. Comm'r*,
    774 F.3d 221 (4th Cir. 2014) ............................................................... 15

*Biden v. Nebraska*,
    143 S. Ct. 2355 (2023) ........................................................................... 2

*Biden v. Texas*,
    142 S. Ct. 2528 (2022) ......................................................................... 13

*Brown v. Gardner*,
    513 U.S. 115 (1994) ............................................................................... 9

*D.A.M. v. Barr*,
    486 F. Supp. 3d 404 (D.D.C. 2020) ..................................................... 13

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ............................................................................... 7

*Diamond Alt. Energy, LLC v. EPA*,
    145 S. Ct. 2121 (2025) ........................................................................... 5

*El Paso County v. Trump*,
    982 F.3d 332 (5th Cir. 2020) ............................................................ 6, 7

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018) ............................................................................... 9

*Equity in Athletics, Inc. v. Dep't of Educ.*,
    639 F.3d 91 (4th Cir. 2011) ................................................................... 3

*Ex parte Endo*,
    323 U.S. 283 (1944) ........................................................................... 9, 10

*Immigr. & Naturalization Serv. v. Chadha*,
    462 U.S. 919 (1983) ............................................................................. 10

*Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*,
    501 U.S. 252 (1991) ............................................................................. 10

*Reed v. Goertz*,
    143 S. Ct. 955 (2023) ........................................................................ 3, 6

*Sierra Club v. State Water Control Bd.*,
    898 F.3d 383 (4th Cir. 2018) ................................................................. 4

*Sierra Club v. U.S. Dep't of the Interior*,
    899 F.3d 260 (4th Cir. 2018) ................................................................. 3

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................. 2

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016) ........................................................................... 13

*Utah v. Evans*, 536 U.S. 452 (2002) ............................................................ 5

*Watt v. Energy Action Educ. Found.*,
    454 U.S. 151 (1981) ........................................................................ 3, 4

*Work v. United States ex rel. McAlester-Edwards Co.*,
    262 U.S. 200 (1923) ........................................................................... 15

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. III .................................................................................. 1, 2

**FEDERAL STATUTES**

5 U.S.C. § 704 ......................................................................................... 13

Commerce, Justice, Science; Energy and Water Development; and Interior and
    Environment Appropriations Act, 2026, Pub. L. No. 119-74, 140 Stat. 5 .......... 8, 9

Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, 131 Stat. 135 .......... 2, 14, 15

Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49 ......... 11, 14, 15

Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459 (2022) .... 11, 14, 15

**OTHER AUTHORITIES**

172 Cong. Rec. S202 (daily ed. Jan. 14, 2026) ................................................. 10

Comm. Resols. Under 40 U.S.C. § 3307(a) and the Availability of Enacted
    Appropriations, 42 Op. O.L.C. 1 (2018) .................................................... 11

**PRELIMINARY STATEMENT**

The federal defendants effectively concede that their July 2025 decisions selecting the Ronald Reagan Building as the site for the Federal Bureau of Investigation (FBI) headquarters project violated statutory requirements. But they argue that the Court should let those unlawful actions stand because there is no way for the Court to issue effective relief, or because Congress has since ratified the actions. Neither of these arguments is valid.

The plaintiffs' injuries are redressable by court action. Vacating the unlawful selection of the Ronald Reagan Building would restore the September 2023 selection of the Greenbelt site and, with it, the plaintiffs' chance of obtaining the immediate and longer-term economic benefits they stand to gain from the Greenbelt project. Courts, including the Supreme Court, have long recognized that even if court relief will not absolutely ensure that a plaintiff obtains a desired benefit, restoration of an *opportunity* to pursue such a benefit satisfies the "redressability" requirement of Article III standing.

The defendants are also incorrect when they assert that the January 2026 appropriations statute ratified their unlawful actions. As explained in the plaintiffs' opening memorandum, the pertinent provision did not confer any new authority on the FBI or the General Services Administration (GSA), and it did not lift any previously imposed restrictions. It only imposed a new requirement for an architectural and engineering plan. The defendants' assertion that Congress blessed the Ronald Reagan Building plan has no grounding in the text of the provision. And the legislative history only further undermines the defendants' reading.

The defendants likewise do not assert any valid arguments in defense of the FBI's July 2025 reprogramming action. The reprogramming action easily qualifies as reviewable final agency action under the "pragmatic" approach prescribed by Supreme Court precedent. The FBI purported to take funds that had been reserved for the Greenbelt project and make them available

for a new purpose. The plaintiffs explained in their opening memorandum that the reprogramming action is invalid because the FBI's sole stated reason for the action was to support the unlawful selection of the Ronald Reagan Building. The defendants did not respond to that argument, so the Court should treat it as conceded. The plaintiffs also explained that $323 million that Congress provided in the Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, 131 Stat. 135, cannot be reprogrammed because it is restricted to the FBI headquarters project by statutory text. The defendants' response fails to account for that statutory text.

The Court should grant the plaintiffs' motion for judgment on the pleadings and should deny the defendants' cross motion.

ARGUMENT

**I.      The plaintiffs' injuries are redressable by court action.**

The plaintiffs' injuries are redressable by court action. Vacating the unlawful selection of the Ronald Reagan Building would restore the September 2023 selection of the Greenbelt site and restore the plaintiffs' chance of obtaining the immediate and longer-term economic benefits they stand to gain from the Greenbelt project.

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." One way courts enforce this limitation is through the jurisdictional requirement of "standing." To meet this requirement, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). When multiple plaintiffs seek the same relief, only one plaintiff needs to demonstrate standing. *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023).

The defendants have not contested the injury and causation elements of standing, and the plaintiffs meet those requirements. *See, e.g.*, *id.* at 2365–66 (holding that a predicted loss of

2

revenue to a state instrumentality met the injury and causation requirements). But the defendants argue that the plaintiffs do not meet the redressability requirement because it is not certain the Greenbelt headquarters project will proceed even if the Court rules for the plaintiffs.

Decades of binding Supreme Court and Fourth Circuit precedent foreclose the defendants' argument. A plaintiff need not show that it is certain to gain a meaningful benefit from a favorable ruling; a "significant increase in the likelihood" of gaining the benefit is enough. *Reed v. Goertz*, 143 S. Ct. 955, 960 (2023) (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)) (finding redressability because a favorable ruling would effect "a change in a legal status" and "the practical consequence of that change would amount to a significant increase in the likelihood" that the plaintiff would obtain what he wanted); *see also Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 100 (4th Cir. 2011) ("[N]o explicit guarantee of redress to a plaintiff is required to demonstrate a plaintiff's standing."); *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018) ("The removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability.").

Even when court relief will not absolutely ensure that a plaintiff obtains a desired benefit, restoration of an *opportunity* to pursue such a benefit is enough to meet the "redressability" requirement. For example, in *Watt v. Energy Action Educational Foundation*, 454 U.S. 151 (1981), California challenged the bidding systems the Department of the Interior had used to award mineral exploration leases, and sought court relief requiring the Department to test different systems. *Id.* at 158. The agency argued that California did not meet the redressability requirement because court relief would "not ensure" that the agency would ultimately choose the bidding systems California preferred. *Id.* at 161. The Supreme Court rejected the argument, finding that it was enough that the agency would be required to test different systems and would

3

presumably choose the system that performed best, which might be favorable to California. *Id.* at 161–62.

Similarly, in *Sierra Club v. State Water Control Board*, 898 F.3d 383 (4th Cir. 2018), opponents of a pipeline project challenged a certification by Virginia state agencies that activities related to construction of the pipeline would not degrade water quality. *Id.* at 386. The company seeking to construct the pipeline argued that the plaintiffs lacked standing because even if the court vacated the certification, the plaintiffs "would need to clear several additional hurdles to eventually obtain the ultimate relief that they seek, namely, more stringent certificate conditions or complete discontinuation of the Project." *Id.* at 400. For the plaintiffs to truly prevail, state agencies would need to make decisions advantageous to the plaintiffs at two later stages, and, even after that, federal agency action could thwart the plaintiffs' plans. *See id.* at 402. Still, the Fourth Circuit found that the plaintiffs met the redressability requirement. *Id.* at 403. Court relief would restore the plaintiffs' "opportunity" to pursue greater success. *Id.* at 401. While the pipeline company argued that the plaintiffs' hopes were dim, the court concluded that it was not appropriate for a court "to engage 'in the speculative (if not impossible) task of predicting how an agency will exercise its discretion.'" *Id.* at 403 (quoting *Townes v. Jarvis*, 577 F.3d 543, 548 (4th Cir. 2009)). There was "at least a realistic possibility" that the plaintiffs would achieve ultimate success, and that was enough to establish redressability. *Id.*; *accord Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 752–53 (4th Cir. 2019).

If a court should not presume to predict the actions of state and federal agencies, it surely should not presume to predict how Congress, whose composition, priorities, and dynamics are ever changing, will exercise its constitutional power of the purse. The Court should resist the defendants' invitation to declare that Congress will never provide funding to complete the

project. *See Utah v. Evans*, 536 U.S. at 463–64 (finding redressability because a court ruling would likely influence the President and congressional officials even if it did not directly bind them). In any event, the project could easily regain momentum—the new headquarters is badly needed, and Congress has already allocated more than $1.4 billion for the project, including as recently as 2024. *See* Mem. in Supp. of Mot. for J. on the Pleadings (Pls.' Opening Mem.) at 8–9, ECF No. 18 (identifying $1.173 billion in funding designated for the project through statutory text, including $200 million appropriated in 2024); Compl. for Declaratory and Injunctive Relief Ex. 5 at 2, ECF No. 1 (U.S. Dep't of Just., Report of Reprogramming Action—FY 2025 (July 1, 2025)) (identifying an additional $232 million previously designated for the project but not through statutory text), *reproduced in* Ex. 35 at J.R. 1753.

Furthermore, the Greenbelt project does not need to be fully funded and completed for Maryland and Prince George's County to benefit. The GSA could take steps to move the project forward with the funding that is already available. In 2024, the GSA advised congressional committees that it was prepared to "expeditiously move forward with site acquisition, design, design related consulting services, management / oversight, and preliminary construction support activities, using GSA's existing balances of approximately $845 million." Ex. 29 at J.R. 1643 (Gen Servs. Admin., Report: Site Acquisition, Design, and Management/Oversight/Support Activities, Department of Justice—Federal Bureau of Investigation Consolidated Headquarters, (2024)). Even these initial steps would immediately benefit Maryland and Prince George's County. *See, e.g.*, Compl. ¶ 59 (noting that Maryland stands to gain from negotiations for an easement on property owned by Maryland); Defs.' Answer to Pls.' Compl. ¶ 59; *see also Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2135 (2025) (noting that even one dollar of economic benefit is enough to establish redressability).

Also, it is more than a little absurd for the defendants to pronounce the Greenbelt project dead, and discourage the Court from rendering aid, when they are the ones holding the gun. As late as November 2024, the GSA was still working to advance the project. Compl. ¶ 43; Answer ¶ 43. After the change in Administration in 2025, the defendants could have focused their efforts on urging Congress to provide more funds for the Greenbelt project and working to obtain approval for the prospectus from congressional committees. Instead, they chose to kneecap the project and pursue a different plan that was in conflict with statutory requirements.

While the FBI's and the GSA's recent hostility to the Greenbelt project is reason to be skeptical of their assessments of the project's viability, that hostility does not undermine the case for redressability. In *Reed v. Goertz*, 143 S. Ct. 955 (2023), the Supreme Court similarly considered a situation where the defendant would have some ability to thwart the plaintiff's future efforts to obtain benefits. The plaintiff, a prisoner, sued a state prosecutor and sought a declaratory judgment that state procedures for postconviction DNA testing violated the Constitution. *Id.* at 960. Justice Thomas, in dissent, objected that the plaintiff could not establish redressability because a ruling for the plaintiff would not require the state prosecutor to grant the plaintiff's request for testing, and, indeed, the state prosecutor insisted that he was not likely to grant the request. *See id.* at 969 (Thomas, J., dissenting). But the majority concluded that the plaintiff met the redressability requirement, reasoning that the state prosecutor might change his mind after a court ruling for the plaintiff. *See id.* at 960 (majority opinion).

Given the Supreme Court and Fourth Circuit precedent discussed and cited above, the Court does not need to consider the nonbinding Fifth Circuit case cited by the defendants, *El Paso County v. Trump*, 982 F.3d 332 (5th Cir. 2020), *cited in* Mem. in Supp. of Defs.' Opp'n to Pls.' Mot. for J. on the Pleadings and Cross-Mot. Mot. for J. on the Pleadings (Defs.' Opening

Mem.) at 21–22, ECF No. 19. In any event, *El Paso County* was materially different from this case. In *El Paso County*, the county asserted that it would benefit from a court ruling invalidating a border wall construction project because funds for the project had been taken from a Fort Bliss road construction project that would deliver benefits to the county. *Id.* at 338. But the Fifth Circuit concluded that the county could not establish redressability because "enjoining the Government from spending the diverted funds on border wall construction does not necessarily result in the Government's use of those funds on the Fort Bliss project." *Id.* at 341. As the court explained it, the funds would simply revert to a general fund used for defense roads access projects, and not to the Fort Bliss project in particular. *See id.* In this case, the FBI and the GSA previously selected the Greenbelt site through the process directed by Congress. Invalidation of the FBI's and the GSA's unlawful selection of the Ronald Reagan Building will reinstate Greenbelt as the selected site for the headquarters project. *See* Pls.' Opening Mem. at 25.[1] And invalidating the FBI's unlawful reprogramming action will preserve funds that Congress specifically set aside for that project and prevent the defendants from using them elsewhere.

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006), also does not support the defendants. The plaintiffs in that case challenged a tax credit granted to an automobile manufacturer. *See id.* at 342–43. They asserted that if the credit were invalidated, their state and local governments would collect more tax revenue and then might choose to reduce taxes for the plaintiffs. *See id.* at 344. The Supreme Court concluded that theory was too speculative to support standing. *Id.* But in this case, the relief the plaintiffs seek is far more closely tied to the

---

[1] The defendants suggest that the FBI could "instead opt to locate its new headquarters in Springfield, Virginia," Defs.' Opening Mem. at 26, but that is wrong. The GSA, not the FBI, was responsible for selecting a site, *see* Pls.' Opening Mem. at 17–18, and the GSA already selected the Greenbelt site as its final choice. It could not make a new choice unless there were some lawful reason to reopen the process. *See* Pls.' Opening Mem. at 16–17 and Ex. 3 at J.R. 134–35.

7

benefits they are pursuing. For all the reasons discussed above, there is ample reason to believe that a ruling that puts the Greenbelt project back on track will materially benefit the plaintiffs.

**II.      The January 2026 Department of Justice appropriations statute did not ratify the defendants' unlawful actions.**

The provision in the January 2026 Department of Justice appropriations statute addressing the FBI headquarters project did not ratify the defendants' actions. By design and operation, the provision only imposed a new obstacle to the Ronald Reagan Building plan in the form of a new requirement for an architectural and engineering plan.

As discussed in the plaintiffs' opening memorandum, *see* Pls.' Opening Mem. 23–25, the provision, Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026, Pub. L. No. 119-74, div. A, tit. II, § 222, 140 Stat. 5, 40, did not grant any new authority and did not lift or modify any restrictions that earlier statutes imposed on the project.

The defendants argue that the provision impliedly repealed the earlier statutory requirements, but as the plaintiffs explained, "[a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing '"a clearly expressed congressional intention"' that such a result should follow." Pls.' Opening Mem. 24 (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018)). The defendants have not met that burden.

The defendants first argue that Congress was aware of FBI's reprogramming action and "did . . . not overturn or otherwise disapprove of" the action. Defs.' Opening Mem. 27. But just because Congress did not take action to repudiate the reprogramming does not mean that Congress meant to endorse the reprogramming and, on top of that, wipe out multiple statutes that stood in the way of the FBI's plans. "Congressional inaction cannot amend a duly enacted

8

statute." *Brown v. Gardner*, 513 U.S. 115, 121 (1994) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 175 n.1 (1989)); *see also id.* at 121–22 (concluding that the absence of congressional action rejecting the agency's approach should not be interpreted as ratification of the agency's approach, especially since the agency's approach violated other statutes).

Second, the defendants assert that the requirement of an architectural and engineering plan should be read to replace, rather than add to, the existing requirements applicable to the FBI headquarters project. But that, again, fails to account for the "stron[g]" presumption against implied repeal, *Epic Sys. Corp.*, 584 U.S. at 510 (alteration in original). The defendants also fail to explain why Congress would require submission of these plans "for review," Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026, div. A, tit. II, § 222, 140 Stat. at 40, if it had already decided to approve the Ronald Reagan Building plan.

Indeed, if Congress had intended to fully clear the way for the Ronald Reagan Building proposal, it likely would have taken action to authorize GSA to redirect the $844 million in the Federal Buildings Fund that GSA has sought to put toward the Ronald Reagan Building plan, *see* Pls.' Opening Mem. 11–12. That funding, after all, accounts for the bulk of the total funding that Congress has provided for development of a new FBI headquarters. But the defendants concede that the statute did not address the GSA funding at all. *See* Defs.' Opening Mem. 19 ("The 2026 Appropriations Act did not address GSA's pending transfer request for the $834 million.").

The defendants have not cited any past case supporting their interpretation of the January 2026 provision. The principal case the defendants rely on, *Ex parte Endo*, 323 U.S. 283 (1944), *cited in* Defs.' Opening Mem. 26–27, in fact weighs strongly against the defendants. In *Ex parte Endo*, the federal government argued that Congress ratified the detention of Japanese Americans

by appropriating funds for the expenses of the War Relocation Authority, and noted that Congress was well informed about the policies, procedures, and activities of the Authority. *See id.* at 303 n.24. Still, the Court found those circumstances did not "plainly show a purpose to bestow the precise authority which is claimed. . . . Congress may support the effort to take care of these evacuees without ratifying every phase of the program." *Id.* In this case, while Congress was aware of the FBI's reprogramming action, and made specific reference to it, that does not mean that Congress meant to clear the way for the reprogramming or the overall plan to develop an FBI headquarters project at the Ronald Reagan Building.

Nothing in the text of the appropriations provision supports the defendants' ratification theory. And the legislative history only further undermines the defendants' reading. The provision was the work of the senior Senator from Maryland, Chris Van Hollen, who stated that the provision was intended to counter "the Trump administration's ongoing efforts to set aside and ignore the decades-long site selection process for a new FBI headquarters." 172 Cong. Rec. S202 (daily ed. Jan. 14, 2026) (statement of Sen. Chris Van Hollen).

The defendants also cite actions and communications of congressional committees or committee chairs raising concerns about the Greenbelt project or expressing approval for aspects of the Ronald Reagan Building plan. *See* Defs.' Opening Mem. 14, 18, 30 (citing Exs. 20, 23, 31–32). But these congressional committees and their chairs do not have authority to override statutes; indeed, the Constitution prevents Congress from granting such authority to its committees or individual members. *See Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 954–55 (1983) (noting that Congress may undo its own earlier actions only through "bicameral passage followed by presentment to the President"); *Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 275 (1991) (noting that "Congress cannot

exercise its legislative power to enact laws without following the bicameral and presentment procedures specified in Article I" and "may not delegate the power to legislate to its own agents or to its own Members"). The Department of Justice's Office of Legal Counsel has recognized this principle in the context of GSA action relating to public buildings. Comm. Resols. Under 40 U.S.C. § 3307(a) and the Availability of Enacted Appropriations, 42 Op. O.L.C. 1, 12–14 (2018).

Thus, the text of the provision, its legislative history, and the defendants' own statements all weigh against reading the recent appropriations provision as ratifying the defendants' unlawful actions. In keeping with the strong presumption against implied repeal, the Court should reject the defendants' interpretation.

### III.    The defendants concede that the FBI and GSA selection decisions violated the pertinent provisions of the Consolidated Appropriations Act, 2022, and Consolidated Appropriations Act, 2023.

The defendants have conceded that the FBI's and GSA's July 2025 decisions selecting the Ronald Reagan Building contravened the requirements of the Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49, and the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459 (2022), so the Court should grant judgment for the plaintiffs on Counts I and II and vacate and enjoin the selection decisions.

The plaintiffs explained that the July 2025 selection decisions contravened statutory provisions that directed the GSA to select a site from three previously identified sites in Greenbelt, Maryland; Landover, Maryland; and Springfield, Virginia, and authorized the GSA, not the FBI, to make the decision. *See* Pls.' Opening Mem. 17–18.

The only legal arguments the defendants presented in defense of the July 2025 selection decisions were the redressability and implied repeal arguments discussed in sections I and II above, which are both unavailing for the reasons discussed in those sections. The Court therefore should vacate and enjoin the July 2025 selection decisions. *See* Pls.' Opening Mem. 25–26.

The defendants insinuate that the Ronald Reagan Building is a more practical choice than the Greenbelt site. But interests of practicality and expediency do not excuse statutory violations, and the defendants do not appear to argue that they could. The Court therefore does not need to wade into the the relative merits of the two sites. It bears noting, however, that the plaintiffs strenuously dispute the claim that the Ronald Reagan Building is superior to the Greenbelt site. Moving a large federal agency with unique security needs into a 30-year-old space that was originally designed for mixed public-private use would pose serious challenges. Similar concerns led the GSA to rule out other potential sites. *See, e.g.*, Ex. 1 at J.R. 6–7 (Gen. Servs. Admin., Federal Bureau of Investigation Headquarters Consolidation, Site Identification and Evaluation: Approving Official's Decision (2014)) (explaining rejection of the Suitland, Maryland site). The FBI and the GSA have not fully analyzed those challenges or the attendant costs. *See* Ex. 18 at J.R. 652 n.4 (Gen. Servs. Admin., Prospectus—Renovation: Federal Bureau of Investigation Headquarters, Ronald Reagan Building, Washington, DC, Prospectus No. PDC-0000AF-DC25) (noting that the costs stated in the prospectus are estimates subject to later revision). Earlier this month, for example, GSA Administrator Edward C. Forst testified that the agency was evaluating whether moving the FBI into the Ronald Reagan Building would require relocating existing tenants, including the National Children's Museum. Mr. Forst promised that, if it became necessary, GSA would assist the museum in finding a new space, at an unspecified cost to taxpayers. *See* Ex. 36 at J.R. 1758, 1:21:55 (H. Comm. on Transp. & Infrastructure, Hearing: The General Services Administration: Examining the Future of Federal Real Estate Management to Reduce Costs for the Taxpayer (Mar. 4, 2026), https://transportation.house.gov/calendar/eventsingle.aspx?EventID=409362).

**IV.    The July 1, 2025, FBI reprogramming action was also unlawful.**

      **A.    The reprogramming action qualified as final agency action because it purported to alter limits on the use of funds set aside for the FBI headquarters project.**

If the Court grants relief against the defendants' unlawful selection decisions, it should vacate the FBI's July 2025 reprogramming action as part of the remedy. *See, e.g.*, *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 416 (D.D.C. 2020) ("[W]hen a court with jurisdiction finds that the plaintiffs before it were harmed by an agency decision issued under an illegal rule, the court should vacate that wrongful decision as a remedy."), *appeal dismissed*, No. 20-5281 (D.C. Cir. Nov. 2, 2020). But the FBI reprogramming action is also independently subject to judicial review, and the Court should hold it invalid.

The defendants contend that the FBI reprogramming action does not qualify as "final agency action" under § 704 of the Administrative Procedure Act, 5 U.S.C. § 704. But the reprogramming action easily qualifies as final under the "pragmatic" approach prescribed by Supreme Court precedent. *See* Pls.' Opening Mem. 16, 18. The FBI purported to take funds that had previously been reserved for the Greenbelt project and make them available for a new purpose, namely, supporting the Ronald Reagan Building plan. That is a definitive action with "direct and appreciable legal consequences," *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)); *see also Biden v. Texas*, 142 S. Ct. 2528, 2545 (2022) (concluding that agency memoranda qualified as final because they "bound [agency] staff" and determined how they would conduct the agency program).

      **B.    The defendants have conceded that the FBI reprogramming action was arbitrary and capricious because its only purpose was to implement the unlawful selection of the Ronald Reagan Building.**

The plaintiffs explained in their opening memorandum that the reprogramming action was unlawful with respect to the entire $555 million amount because the sole reason for the

13

reprogramming decision was to implement the unlawful selection of the Ronald Reagan Building. *See* Pls.' Opening Mem. 18–19. The defendants did not attempt to respond to this argument, and it is legally correct, so the Court should rule for the plaintiffs on Count VI and should vacate and enjoin the reprogramming action.

      **C.      The FBI reprogramming decision is additionally invalid because it violated statutory restrictions on $323 million of the reprogrammed amount.**

Because the defendants concede the plaintiffs' broader argument, it is unnecessary for the Court to consider the plaintiffs' narrower argument that, with respect to $323 million of the reprogrammed amount, the FBI's reprogramming decision violated a statutory requirement restricting the use of the funds to "the new Federal Bureau of Investigation consolidated headquarters facility," Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, div. B, tit. II, 131 Stat. 135, 197–98. But if the Court reaches that argument, it should rule for the plaintiffs on Count III and grant relief from that aspect of the reprogramming action.

As the defendants explained, a federal agency usually retains some "flexibility to shift around funds," but that does not include authority to bypass conditions or restrictions on the use of funds that are imposed by statutory text. *See* Pls.' Opening Mem. 20–21 (quoting *In re LTV Aerospace Corp.*, B-183851, 55 Comp. Gen. 307, 318 (1975)). Here, the Consolidated Appropriations Act, 2017, restricted the use of the funds to "the new Federal Bureau of Investigation consolidated headquarters facility," the same project that is limited to the Greenbelt site through the operation of the provisions of the Consolidated Appropriations Act, 2022, and the Consolidated Appropriations Act, 2023, governing the selection decision.

The defendants argue that the Consolidated Appropriations Act, 2017, does not restrict the use of the funds to a specific project, but permits the use of the funds for *any* project that aims at establishing a "new Federal Bureau of Investigation consolidated headquarters facility."

14

*See* Defs.' Opening Mem. 25–26. But the use of the definite article in the Consolidated Appropriations Act, 2017—"*the* new Federal Bureau of Investigation consolidated headquarters facility"—makes it clear that the funds are tied to a particular project, not FBI headquarters facilities as a general category. *See Belk v. Comm'r*, 774 F.3d 221, 225 (4th Cir. 2014) ("'[T]he' is a definite article, which lends to the noun that follows it a specific rather than general identity."); *Work v. United States ex rel. McAlester-Edwards Co.*, 262 U.S. 200, 208 (1923) (concluding that the phrase "the appraised value" in a statute referred to the result of a specific appraisement that had been directed by a prior statute, not any appraisement). Because the $323 million amount is tied to the FBI headquarters project, and the project in turn is subject to the site selection requirements imposed by the Consolidated Appropriations Act, 2022, and the Consolidated Appropriations Act, 2023, the $323 million amount is necessarily subject to the site selection requirements. As the plaintiffs explained, statutes enacted at different times but addressed to the same object operate as one law under the "related statutes" canon. *See* Pls.' Opening Mem. 21–22 (citing *United States v. Stewart*, 311 U.S. 60, 64 (1940)).[2]

## CONCLUSION

For the reasons above, the Court should enter judgment for the plaintiffs.

---

[2] The defendants are simply incorrect when they assert that the plaintiffs "offer no authority" for the proposition that related statutes must be read together, Defs.' Opening Mem. at 25. The plaintiffs cited Supreme Court precedent and a respected treatise. Pls.' Opening Mem. 21–22 (citing *United States v. Stewart*, 311 U.S. 60, 64 (1940), and Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252–53 (2012)).

Date: March 24, 2026

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ JAMES C. LUH
JAMES C. LUH (D. Md. Bar No. 31776)
ADAM KIRSCHNER (D. Md. Bar No. 31767)
YASMIN DAGNE (D. Md. Bar No. 32016)
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.maryland.gov

Attorneys for State of Maryland

ANTHONY D. JONES (D. Md. Bar No. 31954)
Prince George's County Attorney

/s/ ANDREW J. MURRAY
ANDREW J. MURRAY (D. Md. Bar No. 10511)
(signed by James C. Luh with permission of Andrew J. Murray)
Associate County Attorney
Prince George's County Office of Law
1301 McCormick Drive, Suite 4100
Largo, MD 20774
(301) 952-5225
ajmurray@co.pg.md.us

Attorneys for Prince George's County

16